**FABRI-TEK, INCORPORATED,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17860.

United States Court of Appeals
Eighth Circuit.

Nov. 5, 1965.

C. Donald Peterson, of Howard, Peterson, LeFevere, Lefler & Hamilton, Minneapolis, Minn., made argument for petitioner and filed brief.

Lawrence M. Joseph, Atty., N.L.R.B., Washington, D. C., made argument for respondent and filed brief with Arnold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B. and Warren M. Davison, Atty., N.L.R.B., Washington, D. C.

Robins, Davis & Lyons, by Daniel G. Jacobowski, St. Paul, Minn., for International Brotherhood of Electrical Workers, AFL–CIO, Amicus Curiae.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Fabri-Tek, Incorporated, petitioner herein, has asked this court to review and set aside a decision and order of the National Labor Relations Board (hereafter Board), respondent, dated October 9, 1964, and issued pursuant to § 10 of the National Labor Relations Act (hereafter Act), 29 U.S.C.A. § 151 et seq. The Board, in its answer, has cross-petitioned for enforcement of the order. The decision and order which are the subject of review (1) found that the petitioner had violated § 8(a) (1) and (3) of the Act [1] by requiring some of its employees to remove, and by prohibiting its employees from wearing, certain disputed union insignia at work, and by effecting the termination of six employees who refused to comply with the petitioner's requirements that such disputed union insignia be removed, and (2) ordered petitioner to cease and desist from these and other practices, to make whole the terminated employees, and to post the appropriate notices at its plant in Amery, Wisconsin. The Board's decision and order are reported at 148 N.L.R.B. No. 156. No jurisdictional questions are in issue.

The charge in the complaint is that Fabri-Tek, Incorporated, has "prohibited its employees from wearing union buttons, blouses and other union insignia at the plant, on the ground that wearing union buttons violated a Company rule against union solicitation", thereby violating § 8(a) (1) of the Act, and that petitioner "discharged" six named employees "because they wore union buttons at the plant, and further because of their membership in, assistance to, and activities on behalf of the Union", thereby violating § 8(a) (1) and (3) of the Act.

The petitioner's answer was a general denial of all claims. It further alleged that

"* * * employees were by the rules of the company permitted to wear union buttons at the plant at

courage or discourage membership in any labor organization: * * *."
Under 29 U.S.C.A. § 157, in pertinent part:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *."

---

[1]. 29 U.S.C.A. § 158 (1958) provides, insofar as it may be pertinent here:
"(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; * * *.
\* \* \* \* \* \*
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to en-

any time, except only that they were not permitted to wear or exhibit extraordinary union buttons or ordinary union buttons in an extraordinary manner having the effect of interfering or threatening to interfere with the efficient performance of the work duties of themselves and other employees on company time and premises.

"Affirmatively alleges, further, that another union was at the same times and places undertaking to solicit and campaign for employee support and that the rules of the company were applied equally to both unions and for the lawful objective of promoting and maintaining conditions of work necessary to efficient production and alleges that employees other than said employees did wear, and are wearing, insignia of said union in conformity with said rules and without objection by [petitioner]."

Subsequent to the commencement of this action and prior to trial, the six terminated employees were, at the request of the union, reinstated to employment after an absence from work of approximately one month. The reinstatement was with the understanding that they would comply with petitioner's rules. The reinstatement agreement expressly did not, however, constitute a settlement of the issues herein.

Fabri-Tek is in the business of manufacturing magnetic memory devices for the computer or digital equipment industry. The Trial Examiner, whose findings, conclusions and recommendations were adopted *in toto* by the Board, found that:

"As indicated above, there is no doubt that [petitioner's] finished product is extraordinarily complex and that each item must operate perfectly to enable the ultimate mechanism to function. It is also undisputed that each step in the fabrication of a memory frame is done by hand and requires a high degree of concentration during its performance. The production process, however, has been broken down into a great number of simple steps punctuated by frequent inspections."

Additionally, the testimony indicated that in petitioner's work "there is no such thing as an almost perfect piece". The General Counsel stipulated "that these memory cores and memory frames and magnetic memory frames [used in the memory devices] must be perfect". The malfunction of just one of the 4,000 ferrite cores in the 2″ x 2″ memory frame or one poor connection in one of the 7,000 individually soldered points in the memory stack, composed of several memory frames, could make the complete piece of equipment inoperable. Petitioner's customers include Hughes Aircraft Company, Control Data Corporation (Polaris missile program), Collins Radio, Thompson-Ramo-Wooldridge, General Electric Company, Radio Corporation of America, Radiation Incorporated, and Dynatronics, Inc. (missile tracking and other national defense programs). Fabri-Tek claims that inaccurate work or faulty materials, considering the critical ultimate defense uses of petitioner's product, could be catastrophic to the public welfare. Without going into greater detail, it must be conceded the record indicates very clearly that a high degree of concentration is required on the part of the employees and that distractions of any kind might very well lead to inefficiency, work slowdown and costly errors.

Petitioner's costs in wasted materials and labor are enormous due to the difficulty in producing perfect memory devices. Petitioner's vice president of engineering, Donald Haselhorst, gave uncontradicted testimony that 10% of Fabri-Tek's production is returned by its customers and that at least an additional 60% is rejected within the company. Petitioner thus is consistently faced with the possibility of negligence or breach of warranty actions being brought by its customers. The record indicates many

good-faith actions on the part of petitioner to minimize production mistakes and inefficiency through the improvement of working conditions and the elimination of distractions to employees at their work. Examples of such actions include the installation of "kick boards" or "courtesy boards" below the benches of workers, the installation of head-high "sneeze boards" in the center of work tables to prevent distractions for the great majority of employees from other employees seated across the table, the promulgation of a rule that women workers could not wear "short shorts", that is, anything shorter than normal bermudas, the policy of separating talkative women from each other, the taking of special care in providing lighting to improve efficient concentration, the taking of measures to avoid distractive noise, and so forth.

On August 7, 1963, the International Brotherhood of Electrical Workers (herein I.B.E.W.) filed a representation petition in the Board's Regional Office and on September 24, 1963, the Regional Director issued his Decision and Direction of Election, holding certain classes of employees included and certain classes excluded from the stipulated production and maintenance employees unit. Almost immediately thereafter Henry C. Bennett, a "tester" employed by Fabri-Tek, began to distribute three types of union buttons which he had collected for that purpose. The Trial Examiner described these different kinds of buttons as follows:

"(a) a large round button of the type usually used in political campaigns. It is about 3 inches in diameter, made of metal with a white nonmetalic covering and has a pin and catch on the back. On its face, in red block letters almost ¾ of an inch tall, are the words 'VOTE I.B.E.W.' At the bottom edge, also in red, appears the union label of the emblem's manufacturer. [This will hereafter be referred to as the "large" button.]

"(b) a square, 2 inch emblem enclosed in a slightly larger clear plastic covering with a pin and catch on its back. The top third of the emblem is red, the center third is white and the bottom third is blue. The device is called, in the advertising novelty trade, a 'vari-vue' because two different representations appear in the same space, depending upon the angle from which it is viewed. In the center of the device, in black letters almost 1½ inches tall, appear 'VOTE' and 'I.B.E.W.' If rotated on a horizontal axis, the letters visible change back and forth several times. [This will hereafter be referred to as the "vari-vue" button.]

"(c) the customary union button, about an inch in diameter. This one has a narrow, blue border with the letters 'I.B.E.W.' in white on its upper part and 'AFL-CIO' in small black letters on its lower half. The center is white and displays a clenched hand from which extend the jagged lines which conventionally represent electricity." [This will hereafter be referred to as the "customary" button.]

Bennett was told by I.B.E.W. to hand out the buttons on non-working time and this was done. Certain employees began to wear these buttons while on the job. About the same time a rival union, International Union of Electrical, Radio and Machine Workers (I.U.E.) distributed literature at the plant gate. Those who were distributing the literature or handbills at the gate were required by Fabri-Tek to move off company premises and they thereupon distributed from adjoining property. In addition to the large and vari-vue buttons described heretofore, there were exhibited on company premises during working time other union insignia, including a woman's blouse that was stenciled on the back with the words "VOTE I.B.E.W." in very black 2½-inch letters, and earrings fashioned from customary union buttons.

The petitioner did not object to, nor find any fault with, the wearing in an ordinary way of the customary union buttons. However, when the petitioner became aware of the exhibition by some employees of the large and vari-vue buttons, either on outer garments or underneath a cardigan-type sweater which could be opened and closed to expose the buttons, the stenciled blouse, and the wearing of customary union buttons as earrings for the obvious purpose of attracting the attention of other employees, it issued a memorandum as follows:

"FABRI-TEK MEMORANDUM

"Date October 1, 1963      Copies to:

To   TO ALL EMPLOYEES

From Walter J. Olson

Subject

"In the past few days it has become necessary to request some employees to refrain from carrying on certain campaign activities during working hours, these activities were designed to attract attention of fellow employees and disrupt their work concentration.

"Below you will find a copy of page 23 of the company Personnel Policies, Practices of Procedures Manual. *This provision of the manual prohibits campaigning during working hours.*

"*This provision is not intended to restrict employees in the wearing of buttons, jewelry or other personal labels that would indicate their membership in or association with a labor organization*, fraternal organization, religious group, club or charitable institutions, etc.

"Employees who refuse to abide by this company rule will not be allowed to continue in the employment of this company.

/s/ Walter J. Olson
      Walter J. Olson
      Personnel Manager

WJO:ch"   (Emphasis supplied.)

The Personnel Policies referred to in the above Memorandum are as follows:

"FABRI-TEK Incorporated

Personnel Policies, Practices, and Procedures

July 11, 1962

"RULES GOVERNING
SOLICITATION
ACTIVITIES

"It is the rule of this company that unauthorized solicitation of employees or customers upon company premises by or on behalf of any club, society, labor union, religious organization, political party, or similar association is strictly prohibited. *This prohibition applies both to employees on working time and to outsiders, and it covers soliciting in any form, whether for membership, for subscription, or for payment of money.*

"It is the policy of this company that under no circumstances will a permit for such solicitation be granted in the following areas.

1. General offices, including such offices as executive offices, offices of supervisor, and employment offices.

2. Manufacturing areas, stock rooms, warehouse and storerooms, cloak rooms, locker rooms, and similar areas to which the soliciting employee or outsider is not regularly admitted.

3. Public waiting rooms or reception rooms.

4. Employee restrooms and lunchroom.

"It is the policy of this company, with respect to areas of the plant which are restricted to employees only for use in off-duty periods, that a permit for outsiders to enter into such areas may be granted upon prior application and for good cause to the designated representative of management, who will supply the person with the necessary permit

and an escort to accompany the outsider to and from such area.

"Civic solicitation activity, such as fund raising or promotional campaigns of such organizations as The Community Chest, Blood Bank, Red Cross, and The Aquatennial Association, may be granted access to all areas of the plant only upon the authorization of the designated representative of management.

"All employees are expected strictly to comply with this essential rule. Failure to obey the rule will result in discharge or other disciplinary action. If any employee is in doubt concerning the application of the rule to his own activity while on the premises, he is cautioned to consult with the supervisor." (Emphasis supplied.)

Fabri-Tek attempted to show and offered to prove, through Jack R. Mac-Aloon, its labor relations representative, that it called Clarence A. Meter, Acting Regional Director, Eighteenth Region, National Labor Relations Board, 316 Federal Building, 110 South 4th Street, Minneapolis, Minnesota, at the time it became aware that the use of the large buttons and other solicitation procedures were an "interference with the productive process"; that Meter stated to MacAloon he thought the company was within its rights to request the employees to remove the large or vari-vue buttons, the stenciled blouse and the earrings, and he would be inclined to send the employees home if they did not do so; and that Clarence Meter was the one who had later signed the complaint leading to these proceedings. The offer of proof was denied by the Examiner.

Refusal to remove the disputed insignia led to the six terminations herein involved. The petitioner continued to allow its employees to wear customary buttons in an ordinary way on the job during working time.

The Examiner and the Board, in their conclusionary findings, stated:

"The wearing of union insignia is *not* a form of solicitation and, therefore, the cases cited by [petitioner] involving solicitation, as well as [petitioner's] rule on this subject, are inapplicable."

The Examiner then concluded:

" * * * As indicated above, [petitioner] has failed to prove its contention that the wearing of Union insignia in the plant had an effect of distracting the attention of other employees or disrupting their work concentration. It follows, therefore, and I find, that [petitioner's] prohibition of the wearing of such insignia was not justified for the maintenance of employee efficiency or plant discipline; that by prohibiting employees Bennett, Dewey, Clarence Heacock, Mitchell, Gale, Seydel, Donohue, Petersen and Doris Heacock from wearing Union insignia, [petitioner] interfered, and continues to interfere, with the organizational rights of these and other employees in violation of Section 8(a) (1) of the Act and that, by discharging employees Bennett, Dewey, Clarence Heacock, Mitchell, Gale and Seydel for wearing Union insignia, [petitioner] discriminated against them to discourage their membership in the Union, thereby violating Section 8(a) (3) and (1) of the Act."

After finding that the evidence of distraction of petitioner's employees' attention "so laboriously adduced" was "too trifling to merit serious consideration", the Examiner additionally grounded his conclusion in the finding that Fabri-Tek " * * * introduced no evidence to show that there was any diminution in employee output or efficiency when the buttons, blouse or earrings were being worn".

First, it should be noted that if we were to follow the reasoning of the Examiner as adopted by the Board there

arguably could not have been any violation by petitioner under § 7 as incorporated into §§ 8(a) (1) and 8(a) (3) of the Act, as set out in f.n. 1, supra. Their decision states that, "The wearing of union insignia is *not* a form of solicitation * * * *", referring, of course, to the wearing of large and flashing varivue buttons, stenciled blouses and customary union buttons exhibited in an extraordinary way or manner. Despite the fact that § 7 of the Act, insofar as relevant to this case, specifically contemplates the right to solicit membership and campaign on behalf of a union, the Examiner concludes, even though he alleges that solicitation was not involved herein, that the petitioner was in contravention of the employees' rights under § 7. It is doubtful if the denial by petitioner of the right to wear certain types of buttons in certain ways on company time could be a violation of the Act if, in fact, this was not solicitation leading to the forming of a bargaining unit within the meaning of § 7 of the Act.

■ Be that as it may, we feel, after reviewing the record in its entirety, that there was not substantial evidence to support the Examiner's conclusion that the wearing of the union insignia was not a form of solicitation within the meaning of petitioner's rule and within the meaning of the Act. Appellate courts must respect findings of the Board but such findings can be set aside when there is no substantial evidence to support them. See: Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 488, 490, 492, 71 S.Ct. 456, 95 L.Ed. 456; N.L.R.B. v. Council Mfg. Corp., 8 Cir., 1964, 334 F.2d 161, 163. We think that the wearing of the various over-size insignia was definitely a form of solicitation and campaigning in behalf of I.B. E.W., that that was the only meaning such type of insignia and activities could have had, and that it was in violation of the company's rule against soliciting or campaigning on company time. As will be discussed infra, we further believe, however, that the company rule, as written and enforced, banning the wearing of unusual union insignia or usual union insignia in an unusual way is not in violation of the employees' rights under the Act because of special considerations and circumstances present in this case, i. e., the importance of eliminating distractions to employees, which distractions could lead to a substantial increase in poorly produced memory devices.

■ We are also unable to agree with the Examiner's statement that the evidence with reference to the distracting effect of the wearing of the over-sized buttons, etc., was not sufficient to merit consideration. The Examiner dismissed as "trifling" all the testimony with reference to distraction of the other employees, including the incident where, after hearing about the union buttons being worn in the inspection department, a witness, Gerald Thompson, "and several others walked over to see them." With reference to this incident, Thompson testified:

"Q. Did you on that day go to the inspection area?

"A. Yes, I did.

"Q. Did you observe any persons wearing buttons at that time and place?

"A. Yes.

"Q. How many persons did you see wearing buttons?

"A. I would say approximately four or five.

"Q. I ask you to look at General Counsel's Exhibit 2 and ask you to tell the Trial Examiner which one or ones of the buttons there shown you saw worn on September 27th?

"A. This one, and this one.

"Q. You are pointing both to General Counsel's Exhibit 2-A and 2-B [referring to the large and varivue buttons]?

"A. Yes.

"Q. *What was the reason you went to the inspection area at that time and place?*

"A. *Someone had come into the model shop saying that persons in the inspection department were wearing buttons, and I went in to see who it was.*

"Q. Did any other persons from the machine shop go to the inspection department about that time, if you know?

"A. Yes, I believe they did.

"Q. About how many?.

"A. I would say about at least half of them. There's approximately six or seven people in there.

"Q. *And did you go to the inspection department as a necessary part of your work at that time and place?*

"A. *No.*" (Emphasis supplied.)

In answer to questions by the Trial Examiner, Thompson further testified as follows:

"Q. What do you do in the Machine & Model Shop?

"A. We do the machining of—

"Q. I mean are you a worker there, or are you a foreman?

"A. I am a worker. * * *

"Q. Why did you go?

"A. I just wanted to see who was wearing the buttons. * * *

"Q. Did you see any of these other persons from the machine shop carry any of their work materials to the inspection department?

"A. No. * * *

"Q. Did you see them carry anything from the inspection department back to the machine shop?

"A. No."

We feel this testimony should not have been dismissed as trifling.

■ In regard to the finding of no distraction or tendency to distract the other employees, the Examiner placed the burden on Fabri-Tek " * * * to show that there was any diminution in employee output or efficiency when the buttons, blouse or earrings were being worn". We find no justification whatsoever for the conclusion that Fabri-Tek had to wait until its production records dropped and the efficiency of its employees went down before concluding that these activities of a few employees who engaged in them would have a tendency to distract.

In Caterpillar Tractor Co. v. N.L.R.B., 7 Cir., 1956, 230 F.2d 357, the court refused to enforce an order of the Board which allowed employees to wear buttons with the slogan "Don't be a Scab". The Board had concluded that the wearing of such buttons during working hours was a protected activity within the purview of § 7 of the Act and that by suspending employees for wearing the scab button in the work shop the employer had violated § 8(a) (1) and (3) of the Act. Therein the court said, at page 359:

"We are of the opinion that petitioner's anticipation that the 'Scab' buttons would prove disruptive of employee harmony in its plant and destructive of discipline in production was fully justified. *It was under no compulsion to wait until resentment piled up and the storm broke before it could suppress the threat of disruption by exercising its right to enforce employee discipline.*" (Emphasis supplied.)

Accord: N. L. R. B. v. Harrah's Club, 9 Cir., 1964, 337 F.2d 177. The same principle is applicable herein. Petitioner was not required to wait until an actual diminution of efficiency could be objectively shown before finding, in fact, that harmful distraction was present.

■ It has been conclusively established that employees do have the right to wear union insignia during working time as a legitimate union activity and that interference with this right by the employer is generally unwarranted. See, e. g., Republic Aviation Corp. v. N. L. R. B., 1945, 324 U.S. 793, 801–803, 65 S.Ct. 982, 89 L.Ed. 1372. This right has even been extended to allow union employees, who bowled in a league after

work, to wear bowling shirts to work with the name of the union sponsor on the shirt backs. N. L. R. B. v. Power Equipment Co., 6 Cir., 1963, 313 F.2d 438. However, and very importantly, an employer can prohibit or regulate the wearing of union insignia where, as the Trial Examiner himself states, there are "special considerations relating to employee efficiency and plant discipline". See, e. g., N. L. R. B. v. Harrah's Club, supra; Wah Chang Corp. v. N. L. R. B., 9 Cir., 1962, 305 F.2d 15; Caterpillar Tractor Co. v. N. L. R. B., supra; Boeing Airplane Co. v. N. L. R. B., 9 Cir., 1954, 217 F.2d 369. As stated by the Caterpillar Tractor court at page 359 of 230 F.2d:

"In view of the zealous argument advanced by petitioner, we think it wise, perhaps, to negate the erroneous position which we understand it takes that it could properly have prohibited any organizational activity on company time, and might, also, have forbidden the wearing of the other slogan buttons employed in the union's campaign. *We think its right in this respect is limited to the restriction of activities which disrupt, or tend to disrupt, production and to break down employee discipline, and does not include restriction of passive inoffensive advertisement of organizational aims and interests, i. e., the wearing of advertising insignia and buttons, which in no way interferes with discipline or efficient production.* Cf. Republic Aviation Corporation v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372. The 'Scab' insignia falls because of its inherent disruptive influence." (Emphasis supplied.)

In the instant case the employees never lost their right to wear union insignia in the form of customary buttons. This right was in no way challenged by petitioner. In the related case of Retail Store Employees Union Local 954, etc. v. Rothman, 1962, 112 U.S.App. D.C. 2, 298 F.2d 330, a mandatory injunction was sought to require the Board's General Counsel to issue an unfair labor practice complaint against the employer. The District Court dismissed and plaintiff appealed. The Court of Appeals held that the General Counsel did not abuse his discretion in refusing to issue a complaint on a charge that employer's rule forbidding store employees to wear insignia larger than a nickel was an unfair labor practice. In so doing, the court said at page 332 of 298 F.2d:

"Here, as in Hourihan [Hourihan v. N. L. R. B., 91 U.S.App.D.C. 316, 201 F.2d 187] plaintiff seeks to make out a case of abuse of discretion. It urges that the General Counsel ignored or refused to follow Board authority to the effect that employees have the right to wear union buttons or pins while working. In this connection plaintiff cites Safeway Stores, Inc., 110 NLRB 1718, and National Labor Relations Board v. W. T. Grant & Co., 94 NL RB 113, affirmed, 199 F.2d 711 (9th Cir. 1952). Those cases are not in point. There the employers denied the right of employees to wear *any* union buttons or pins while working, and this was only a minor factor among other major items making up a finding of unfair labor practices. Caterpillar Tractor Co. v. National Labor Relations Board, 113 NLRB 553, 230 F.2d 357 (7th Cir. 1956), also relied upon by plaintiff, while recognizing the right of an employee to wear union buttons, indicates that this right is not an unrestricted one.

"In the instant case there is no showing of a course of conduct, simply efforts to put the wearing of pins in line with the general rules of the company; and the Regional Director and the General Counsel concluded that there was insufficient basis for a finding that the company's rule with respect to the wearing of insignia was discriminatory or constituted an unreasonable impediment to the exercise by em-

ployees of their rights under the Act.

"The refusal of the General Counsel to issue a complaint in the case before us was well within the discretion conferred upon him by the statute."

Herein petitioner is in even a stronger position since its Memorandum of October 1, 1963, supra, pointed specifically to the right to wear "buttons, jewelry or other personal labels that would indicate their membership in or association with a labor organization," etc. The petitioner's objection here goes to the large size of the buttons, the "flashing" of the vari-vue buttons, the wearing of the union insignia buttons as earrings, and the use of out-size letters stenciled on the back of a blouse saying "VOTE I.B.E.W.". We think that such out-size insignia and the wearing of ordinary insignia in an extraordinary way could well tend to distract the attention of employees from concentration during working time which result was apparently intended by those passing out the objectionable buttons. The fact that such distraction did disrupt, and conceivably could have continued to disrupt, the concentration of petitioner's employees in a pursuit where concentration was a necessity and cause great economic loss to petitioner was such a "special consideration" as to justify petitioner's actions in enforcing the non-solicitation rule by prohibiting all but customary buttons to be worn in a conventional manner. The Board itself, in N. L. R. B. v. Peyton Packing Co., Inc., 1943, 49 N.L.R.B. 828, 843, enforced 5 Cir., 1944, 142 F.2d 1009, certiorari denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 585, has stated the following, which was quoted with approval by the Supreme Court in Republic Aviation Corp., supra, at f.n. 10, page 803 of 324 U.S., page 988 of 65 S.Ct.:

" * * * The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. *Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours.* Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property." (Emphasis supplied.)

Clearly, petitioner's rule against solicitation was not adopted for discriminatory purposes and there was no anti-union animus present.[2] The rule was solely designed to prevent distracting the attention of the employees during working time. Petitioner's good faith was never challenged and, if anything, was deemed only to be irrelevant. Petitioner knew, in light of the forthcoming election ordered by the Regional Director that either I.B.E.W. or I.U.E. would eventually represent the employees. It was not seeking to stop this election nor did it favor one union over the other, as evidenced by its refusal to allow I.U.E. to pass out literature on company grounds. That petitioner was interested only in preventing costly distractions during working time through the limitation of campaigning by rival union factions was further evidenced by the testimony of Doris Heacock, an employee

---

2. A finding of anti-union animus on the part of petitioner might constitute an unfair labor practice. See, e. g., Textile Workers Union of America v. Darlington Mfg. Co., 1965, 380 U.S. 263, 274–275, 85 S.Ct. 994, 13 L.Ed.2d 827; N. L. R. B. v. Adams Dairy, Inc., 8 Cir., September 8, 1965, 350 F.2d 108, 113, 60 L.R.R.M. 2084, 2088; N. L. R. B. v. Power Equipment Co., 6 Cir., 1963, 313 F.2d 438, 442; Revere Camera Co. v. N. L. R. B., 7 Cir., 1962, 304 F.2d 162, 165.

of petitioner and a witness for respondent, who stated that personnel manager Olson had told her:

"* * * it wouldn't make any difference whether we [Mrs. Heacock and another employee] were wearing non-Union buttons, or Presidential campaign buttons, or anything. He said he would have to ask us to take them off—no-wheres on the premises."

There was some testimony that some soliciting, such as office and charitable collections, had been carried on during working hours on company premises in apparent violation of petitioner's anti-solicitation rule. It would seem, however, that this type of activity would certainly be less disruptive than union campaigning. Also, it should be pointed out that petitioner did not prohibit the wearing of the disputed union insignia the first day it was distributed, which would further indicate that it had become interested in such union activity only after it started to become disruptive and a threat to production.

Certain cases relied on by the Trial Examiner and respondent are factually distinguishable from the situation herein. In N. L. R. B. v. Power Equipment Co., supra, there was a history of anti-union animus by the employer and a lack of "unusual circumstances" to justify ordering the removal of the bowling shirts. In N. L. R. B. v. Floridan Hotel of Tampa, Inc., 5 Cir., 1962, 300 F.2d 204, where the court upheld the Board in overturning an employer's rule that employees could not display buttons of any sort, there was no showing that services of the hotel would be affected by the wearing of the buttons. In that case there was an absolute prohibition against the wearing of union insignia, whereas in the instant case the wearing of union insignia was only regulated. It is sufficient to say that other cases cited in opposition to the instant result are equally distinguishable.

Considering the record as a whole, we believe that petitioner's prohibition of the use of the attention-attracting emblems during working time is an entirely reasonable exercise of its rights of management and employee discipline. As is pointed out by both the respondent and the Trial Examiner, it is true that other distractions, such as a loud speaker system used to page employees and the problem of employees on a break passing by other still-working employees, still exist in petitioner's plant. However, the fact that certain things may still remain to be done clearly cannot be used as a basis for criticising the actions, including such actions as are involved herein, already taken by petitioner to eliminate and foreclose various types of distractions within the plant. The company policy on solicitation as it applied to the unusual union insignia was clearly in line with petitioner's past efforts to minimize costly distractions.

The Board's order is set aside and enforcement thereof denied.