**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BANGOR PLASTICS, INC., Respondent.**

**No. 17697.**

United States Court of Appeals

Sixth Circuit.

April 11, 1967.

---

Richard Adelman, N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Attorney, N.L.R.B., Washington, D. C., on brief, for petitioner.

Walter L. Adams, Chicago, Ill., Harry T. Edwards, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief, for respondent.

Before O'SULLIVAN and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is before the Court upon the petition of the National Labor Relations Board for enforcement of its order, issued January 28, 1966, against Bangor Plastics, Inc., the respondent herein. The Board determined that respondent committed unfair labor practices in violation of Section 158(a) (1) and (3), Title 29 U.S.C. The Board's order and decision is reported at 156 NLRB 1165. This Court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred in Bangor, Michigan, within this judicial circuit. Section 160(e), Title 29, U.S.C. Respondent is engaged in the manufacture, sale and distribution of plastic moldings and related products.

On October 24, 1963, The International Union, Allied Industrial Workers of America, AFL-CIO (the union), filed charges alleging that respondent committed various unfair labor practices in violation of Section 8(a) (1) of the Act, and that respondent violated Section 8(a) (3) of the Act by discriminatorily discharging employee Billie Baxter. This latter 8(a) (3) charge was subsequently withdrawn. The other charges were settled by agreement, which was approved by the regional director on January 9, 1964. The agreement provided that respondent would post an appropriate notice and that "contingent upon compliance with the terms and conditions" thereof no further action would be taken in the case.

On January 20, 1964, respondent, in conformity with the settlement agreement, posted a notice[1] to all employees stating that it would not engage in certain conduct violative of the Act and that it would recognize the rights guaranteed by Section 7 of the Act. At the same time the respondent posted the following notice alongside the notice posted pursuant to the settlement agreement:

"NOTICE TO ALL EMPLOYEES

"POSTED ON OUR BULLETIN BOARD IS AN OFFICIAL NOTICE OF THE NATIONAL LABOR RELATIONS BOARD. THIS NOTICE IS BEING PRESENTED PURSUANT TO AN AGREEMENT REACHED WITH THE NATIONAL LABOR RELATIONS BOARD IN CONNECTION WITH UNFAIR LABOR PRACTICE CHARGES WHICH WERE FILED.

"THE COMPANY OBTAINED A DISMISSAL OF WHAT WE CONSIDERED TO BE THE MOST IMPORTANT PART OF THE UNFAIR LABOR PRACTICE CHARGES. RATHER THAN LITIGATE THE REMAINING PORTION OF THE CHARGES, WE HAVE AGREED TO THE POSTING OF THE NOTICE.

"THE POSTING OF THIS NOTICE IN NO WAY ADMITS ANY WRONG DOING ON THE PART OF THE COMPANY. WE HAVE ALWAYS BELIEVED IN THE PROTECTION OF THE LEGAL RIGHTS OF OUR EMPLOYEES. THE POSTING OF THIS NOTICE IS DONE SOLELY BECAUSE WE DO NOT WISH TO WASTE ANY MORE MONEY ON ATTORNEY'S FEES AND OTHER EXPENSES WHICH WOULD BE INVOLVED IN THE LITIGATION.

"G. P. WOKECK"

On February 20, 1964, the acting regional director notified respondent that posting of the supplementary notice constituted non-compliance with the terms of the settlement agreement and withdrew his approval. Following the issuance of a formal complaint and hearing, the Board determined that the respondent had committed the various unfair labor practices originally charged by the union on October 24, 1963. The Board held that "respondent's notice posted along-

1.
                "NOTICE TO ALL EMPLOYEES
                        PURSUANT TO
        "A Settlement Agreement in Case No. 7–CA–4428
                which was approved by the Acting Regional
                Director of the Seventh Region of the
                NATIONAL LABOR RELATIONS BOARD
                and in order to effectuate the policies of the
                NATIONAL LABOR RELATIONS ACT.

"We are posting this Notice to inform our employees of rights guaranteed them in the National Labor Relations Act:

"WE WILL NOT interrogate employees regarding union activities.
"WE WILL NOT threaten employees with any reprisal in order to encourage or discourage membership in any labor organization.
"WE WILL NOT engage in any activity designed to create the specific impression of surveillance of our employees' union activities.
"WE WILL NOT in any other way violate any of the rights which you have under the National Labor Relations Act to form, join, or assist International Union, Allied Industrial Workers of America, AFL–CIO, or any other union of your choice, or to engage in union activities, or to join with other employees for the purpose of collective bargaining or other mutual aid and protection.
"All of you are free to become or remain members of any labor organization, or to refrain from becoming or remaining members of any labor organization, except to the extent that such right is affected by an agreement conforming to the provisions of Section 8(a) (3) of the National Labor Relations Act, as amended.

                        "Bangor Plastics, Inc.
                            (Employer)"

side the Board's notice was a patent attempt to minimize the effect of the Board notice," and "did not comply with the settlement agreement."

■ The Board's Regulations, 29 C.F.R. § 101, provide for various informal methods of disposing of charges filed against a party, including settlement agreements between the parties, subject to the approval of the regional director. The regulations further provide that "if the respondent fails to perform his obligations under the informal agreement, the regional director may determine to institute formal proceedings." It is only when a party to the settlement agreement has breached its terms or has committed further illegal acts, that the regional director is justified in setting aside the settlement agreement and issuing a formal complaint. Wallace Corp. v. N.L.R.B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216; N.L.R.B. v. Superior Tool & Die Co., 309 F.2d 692 (C.A. 6).

In this case respondent posted the appropriate notice as required by the settlement agreement. Respondent did not violate any of the provisions contained in the notice, nor commit any unfair labor practices between January 9, 1964, the date of the settlement agreement, and February 20, 1964, when the regional director's approval was revoked. It is not contended that the additional notice itself amounted to an unfair labor practice. The Board's position seems to be that the additional notice violated the spirit of the settlement agreement, and hence was not in compliance with it. The Board interprets the notice to mean that "the Board's notice is being posted as a mere formality and that respondent's true sentiments are to be found in its own notice, not the Board's."

■ A settlement agreement does not amount to a finding or admission that respondent has committed an unfair labor practice. The regulations provide for attempts at settlement prior to the issuance of a formal complaint. A complaint is issued if after investigation and unsuccessful attempts at an informal disposition, it "appears" that the charges have merit. Thus at this stage of the proceeding there has been no adjudicatory finding of an unfair labor practice, nor can one be read into the settlement agreement. The Board concedes that such agreements are most often prompted by a desire to reach an amicable disposition of the matter without the need for expensive and time-consuming hearings and court review. Such agreements "are not an admission of past liability," but serve to regulate future responsibilities of the parties. Poole Foundry & Mach. Co. v. N.L.R.B., 192 F.2d 740 (C.A. 4), cert. den., 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709. Consequently there was nothing improper in respondent's statement that "the posting of this notice in no way admits any wrong doing on the part of the company" and was done to avoid the expense of litigation.

■ Neither the Act nor the Constitution tolerates an abridgement of the right of an employer to communicate with his employees so long as he does not attempt to infringe the rights of his employees as guaranteed by the Act. N.L.R.B. v. Teamsters & Chauffeurs Union, etc., 241 F.2d 428 (C.A. 7). It is not contempt of court to distribute and post notices similar in tone to the one posted in this case, following enforcement by a Court of Appeals of an order of the Board containing a provision for the posting of appropriate notices. N.L.R.B. v. Teamsters & Chauffeurs Union, supra; Budd Mfg. Co. v. N.L.R.B., 142 F.2d 922 (C.A. 3). If the additional notices issued in those cases were not violative of the Board's orders, it would be difficult to hold that the notice herein is a violation of the settlement agreement when the notice does not violate either the explicit terms of the settlement agreement or the Act.

There is no claim and no evidence to support a claim that the posting of the supplemental notice caused the union any difficulties or in any way impaired its activities. In light of N.L.R.B. v. Teamsters and Chauffeurs Union, supra, and Budd Mfg. Co. v. N.L.R.B., supra,

and for the reasons stated herein, the Board erred in upholding the regional director's revocation of his approval of the settlement agreement.

In view of this conclusion it is unnecessary to consider the Board's holding that respondent committed unfair labor practices as alleged in the original complaint based upon the charges filed October 24, 1963, and which were the subject of the settlement agreement.

On March 10, 1964, Emil Wokeck, respondent's president, discharged employee William Dunn. Dunn filed an unfair labor practice charge which was consolidated with the charge previously filed. The Board concluded that his discharge was in violation of Section 8(a) (3)[2] of the Act and ordered respondent to offer immediate and full reinstatement to Dunn with back pay.

Dunn was first employed by respondent on February 20, 1962 and worked at its plant until he was discharged. Dunn was an active union supporter who solicited memberships from his fellow employees. Respondent admits that it had knowledge of Dunn's union activities and was opposed to having a union represent its employees. Respondent argues that it was improper for the Board to consider any evidence relating to events occurring before the date of the settlement agreement, January 9, 1964, to support its finding of an 8(a) (3) violation. However such evidence relates to activities which took place at least five months prior to Dunn's discharge and merely corroborates the admitted facts that Dunn actively supported the union, that respondent knew of his activities and that respondent was opposed to such activities and the presence of a union within its plant.

Between 12:30 and 1:00 p. m. on March 10, 1964, foreman Chester Slazek and office employee Phillip Lee chanced to meet in the plant about five feet from the machine operated by Dunn. After a five- or ten-minute conversation between Slazek and Lee, Dunn turned toward them and directed a crude and vulgar remark at them. Slazek asked Dunn whether he was trying to be wise or funny. Dunn replied that Slazek could take it either way. At 3:00 the same afternoon, Slazek reported the incident to Emil Wokeck. Slazek also related another instance which occurred on March 3, 1964, in which Dunn accused Slazek in extremely coarse and vulgar language of currying favor with the company's president. Emil Wokeck ordered the discharge of Dunn because of the insulting manner in which he addressed Slazek. Dunn admits making these vulgar remarks.

The Board in its opinion admitted that Emil Wokeck acted in good faith in discharging Dunn upon receiving Slazek's report of Dunn's remarks. However the Board found unlawful discrimination in Slazek's motive for reporting the incident to Emil Wokeck, because of Slazek's past record of anti-union activity and another incident occurring on March 10, 1964. On the morning of March 10th, Slazek accused Dunn of posting a union notice on the company bulletin board and then trying to place the blame on someone else. Dunn denied the accusation. At about 1:30 that afternoon, Slazek again made the same remark to Dunn. The Board concluded from this evidence that Slazek was unlawfully motivated in reporting Dunn to Emil Wokeck, which act led to the discharge of Dunn.

The law is clear that an employer may discharge an employee for any reason whatsoever, so long as he is not motivated by anti-union discrimination. National Labor Relations Board v. Waterman S.S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704, rehearing den. 309 U.S. 696, 60 S.Ct. 611, 84 L.Ed.

2. "(a) It shall be an unfair labor practice for an employer—
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:" * * *

1036; N.L.R.B. v. Challenge-Cook Brothers of Ohio, Inc., 374 F.2d 147 (C.A. 6); N.L.R.B. v. Ogle Protection Service, Inc., 375 F.2d 497 (C.A. 6), cert. den. 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed.2d 108: Union membership and activities is not a shield behind which a discharged employee can take refuge and claim discrimination. N.L.R.B. v. Ogle Protection Service, Inc., supra; Wellington Mill Division, West Point Mfg. Co. v. N.L.R.B., 330 F.2d 579 (C.A. 4), cert. den., 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed. 2d 88. The burden remains upon the General Counsel to prove that the reason for the discharge was the employer's anti-union hostility. An employer is not obliged to treat a union member differently or with greater deference than any of his other employees. Poor performance, misconduct and insubordination, for example, do not have to be tolerated merely because the offenders are among the plant's most active union supporters. An employer's stated opposition to unionization is not in itself sufficient evidence to sustain a finding that an employee was discharged because of discrimination against a union. N.L.R.B. v. Ogle Protection Service, Inc., supra; N.L.R.B. v. Redwing Carriers, Inc., 284 F.2d 397 (C.A. 5).

Foreman Slazek was not required in the instant case to countenance the abuse directed at him by Dunn. Slazek's reaction to Dunn's insolent, vulgar and offensive remarks was natural and, in the light of the evidence, cannot be attributed to prior anti-union activity. The record demonstrates that Slazek acted reasonably and justifiably in reporting the incident to Emil Wokeck who acted in good faith in discharging Dunn based upon Slazek's report.

Therefore we hold that there was no substantial evidence to support the Board's conclusion that respondent violated Section 8(a) (3) and (1) of the Act in discharging William Dunn. Section 160(e), Title 29, U.S.C.

Enforcement of the Board's order is denied.