NEWS–TEXAN, INC., Petitioner-Cross-
Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent-Cross-
Petitioner.

No. 27425.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1970.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for petitioner News-Texan, Inc.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Elmer P. Davis, Director, N.L.R.B. 16th Region, Fort Worth, Tex., Herbert Fishgold, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, William Wachter, Atty., N.L.R.B., for respondent.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This case is before the Court of Appeals upon the petition of News-Texan, Inc., to review and set aside an order issued against it on March 6, 1969, pursuant to Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The Board has filed a cross-application requesting enforcement of its order.

News-Texan, Inc., petitioner, is engaged in the newspaper publishing business, with plants in several Texas towns including Arlington, Texas. It is a wholly owned subsidiary of A. H. Belo Corp., which publishes The Dallas Morning News, but is operated independently of the parent corporation. The Dallas Typographical Union represents employees in the composing room of the Belo Corp., but does not represent any News-Texan employees. In the late summer of 1967, petitioner transferred some of the Irving office composition work to its Arlington plant. On September 10, 1967, Joy Lee Kropp was hired as a teletypesetter operator in the Arlington composing room because the Company needed an additional teletypesetter operator in order to handle the Irving composition. Kropp had no previous experience, but had attended a teletype school sponsored by the Dallas Typographical Union. During the two months of her employment, she was advanced from her initial job of doing straight copy work to proofreading and correction of final copy, and two days before her discharge, she was informed by a company foreman that she had been granted a wage increase.

Although News-Texan's employees were not then organized, Joy Kropp often expressed sympathy toward unions in conversations with other employees. However, she never identified any particular union in these discussions.

In late October or early November, a company foreman told Kropp that News-Texan was going to install a dataphone machine at Arlington that would be used to run tape with material from the Dallas Morning News. The employees of that paper were represented by the Typographical Union. Later, Kropp went to the offices of the Union in Dallas and advised two union officials that petitioner had put in a dataphone to run the Dallas Morning News tape through its computer. The union officials were then engaged in negotiations at Dallas relating to the jurisdiction of the programing of the computer and the processing of the tapes. One of the biggest disputes between the Union and the Dallas Morning News came from the computers that were in the satellite papers such as the Arlington plant of News-Texan. The union officials expressed interest in the information and speculated that News-Texan might be made to pay union rates to Arlington employees who would perform the transferred work. Kropp reported her conversation with the union officials to a co-worker, Juanita Blakely, and stated that the Union would now compel the Company to pay union wages to employees who performed the transferred work. She explained that the union officials were excited about the news and that they had requested her to report further developments. The next day Blakely informed a supervisor of Kropp's statements and also told the plant superintendent. On November 9, Kropp was fired; News-Texan's personnel form indicated that the sole reason for her discharge was a reduction in the work force. However, to supplement this, petitioner explains that it had been decided before this situation arose to release Kropp. News-Texan had concluded that as a possible method of reducing costs at the Arlington plant that some of the work

should be returned to Irving plant and one of the employees at Arlington could be eliminated. Kropp and two employees less senior than she were considered. When it was reported that Kropp had divulged company business, News-Texan decided that she, of the three under consideration, should be discharged.

On November 2nd, the Dallas Typographical Union filed an unfair labor practice charge, alleging that petitioner violated Section 8(a) (1) and (3) of the National Labor Relations Act by discharging Joy Lee Kropp under these circumstances. All parties appeared for hearing before the Trial Examiner on March 26, 1968; and the hearing culminated in a settlement agreement reached between News-Texan and the Board's General Counsel; the agreement was approved by the Trial Examiner over the objections of the Union. This settlement agreement obligated News-Texan to post and comply with the terms of a notice providing in effect that News-Texan would not violate Section 8(a) (1) and (3) of the National Labor Relations Act, would reinstate Joy Lee Kropp, and would make her whole for any losses she sustained as a result of her discharge.[1] The Company, on the same day, would post a "Notice to all Employees" on the plant bulletin board which contained all the agreed-upon provisions. However, at the same time, the company president, Robert M. Johnson, made a speech to all Arlington employees in which he stated, to-wit:

"We would not have agreed to the Board's suggestion for a settlement if

1.

NOTICE TO ALL EMPLOYEES

Pursuant to

A SETTLEMENT AGREEMENT
APPROVED BY THE REGIONAL DIRECTOR FOR THE
SIXTEENTH REGION OF THE

National Labor Relations Board
and in order to effectuate the policies of the
National Labor Relations Act

(AS AMENDED)

we hereby notify our employees that:

WE WILL NOT discharge any of our employees or discriminate in regard to their hire, tenure of employment, or any term or condition of employment, because they have engaged in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

WE WILL NOT in any other manner interfere with, restrain, or coerce employees in the exercise of their right to engage in, or to refrain from engaging in, any or all of the activities specified in Section 7 of the Act.

WE WILL offer JOY LEE KROPP immediate and full reinstatement to her former job without prejudice to any rights and privileges previously enjoyed.

WE WILL make whole JOY LEE KROPP for any loss of pay suffered as a result of her discharge.

All of our employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities.

NEWS–TEXAN, INC.
(Employer)

Dated 3/26/68

By ROBERT M. JOHNSON, Pres.
(Title)

This Notice must remain posted for 60 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other material.

If employees have any question concerning this Notice or compliance with its provisions, they may communicate directly with the Board's Regional Office, Rm, 8A24, Federal Office Building, 819 Taylor Street, Fort Worth, Texas 76102.

the following had not occurred: The settlement calls for a posting by us for 60 days of a notice which contains five paragraphs. One paragraph reads, 'We will offer Joy Lee Kropp immediate and full reinstatement to her former job without prejudice to any rights and privileges previously enjoyed.' We agreed to this only because it was stated to us by the N.L.R.B. and Union officials that Joy Lee Kropp does not want her job back. Otherwise, we would not have agreed to do this. Another paragraph reads, 'We will make whole Joy Kropp for any loss of pay suffered as a result of her discharge.' We have learned through the N.L.R.B. and the Union lawyer that Joy Lee Kropp did not suffer any loss of pay as a result of her discharge and that we therefore will not pay her anything. Otherwise, we would not have agreed to this provision of the notice."

On April 2nd, a copy of the above was distributed to each employee.

On May 24, 1968, the General Counsel filed a "Motion to Reopen Hearing, Amend Complaint, and Set Aside Settlement Agreement" based on the speech and the distribution to the employees. The Trial Examiner granted the motion. On October 18, 1968, the Trial Examiner issued a decision, stating reasons for setting aside the settlement agreement, and finding that News-Texan's discharge of Kropp violated Section 8(a) (1) and (3) of the National Labor Relations Act. The Trial Examiner's decision was adopted by the Board.

█ News-Texan argues that the Board improperly found that the speech and letter accompanying the posting of the Board's notice constituted noncompliance with the settlement agreement. News-Texan places heavy reliance upon the cases of N.L.R.B. v. Bangor Plastics, Inc., 392 F.2d 772 (6 Cir. 1967) and N.L. R.B. v. Teamsters and Chauffeurs U., 241 F.2d 428 (7 Cir. 1957). Both of these cases dealt with the setting aside of a settlement agreement.

The case of N.L.R.B. v. Bangor Plastics, Inc., supra, presented a question that is apposite to this action. In *Bangor* a settlement agreement was reached by the parties involved and the terms of the settlement were posted. At the same time the respondent posted a notice to all employees alongside the notice posted pursuant to the settlement agreement. It read in part:

"The posting of this notice in no way admits any wrongdoing on the part of the Company. We have always believed in the protection of the legal rights of our employees. The posting of this notice is done solely because we do not wish to waste any more money on attorney's fees and other expenses which would be involved in the litigation."

The regional director revoked his approval of the settlement agreement contending that the supplementary notice constituted noncompliance. The Board upheld the regional director's ruling that the supplementary notice was "a patent attempt to minimize the effect of the Board notice". However, on review in the Sixth Circuit Court of Appeals, enforcement of the Board's order was denied. That Court determined that "it is only when a party to the settlement agreement has breached its terms or has committed further illegal acts, that the regional director is justified in setting aside the settlement agreement and issuing a formal complaint. [Cases omitted]." It concluded that "there was nothing improper in respondent's statement that 'the posting of this notice in no way admits any wrong doing on the part of the Company' and was done to avoid the expense of litigation" in that the Board conceded "that such agreements are most often prompted by a desire to reach an amicable disposition of the matter without the need for expensive and time-consuming hearings and court review". "Such agreements 'are not an admission of past liability' but serve to regulate future responsibilities of the parties."

A cursory reading of the letter posted in this case reveals that its contents are quite different from the substance of the supplementary notice in *Bangor*. In *Bangor*, the Company merely gave administrative reasons why it had accepted the settlement, such reasons having little if any effect on the substantive portion of the agreement. However, the speech and letter presented by News-Texan was calculated to decimate the crucial terms of the settlement. News-Texan made it plain to their employees that they would not have accepted the material provisions of the settlement except that these provisions were meaningless and in reality required nothing of the Company. Essentially, News-Texan breached the settlement concord by deleting substantial portions of the actual agreement. The heart of the dispute between the Company and the Union centered around Joy Lee Kropp, her position with the Company, and her dismissal. In agreeing to announce to their employees that they would offer Kropp a job and make her whole, News-Texan was demonstrating its willingness to compromise. The greatest import that the notice, taken as a whole, had was in its desired effect upon News-Texan's employees. Petitioner's statement in the letter and speech that it would not have agreed to the terms of the settlement except that it was assured Kropp did not want to return and that she had suffered no losses rendered the settlement paltry, subverting its effect on the employees; and, thereby, not merely breaching it, but destroying its substance and purpose. In neither *Bangor* nor N. L. R. B. v. Teamsters and Chauffeurs U., supra, did the supplementary notice do more than state the administrative reasons which have always been considered strong imputations for settlement. We agree with the *Bangor* and *Teamsters* cases, but distinguish this case as one in which the supplementary notice nullified the settlement agreement.

The second contention outlined by News-Texan is that the Board erred in holding that petitioner violated Section 8(a) (1) and (3) of the National Labor Relations Act by discharging Kropp. News-Texan asserts that Kropp was engaged in unprotected activities and her discharge was not a violation of the Act. The reason for discharge stated in the personnel form was a reduction in the work force.

As News-Texan contends, it is well settled that Section 7 of the National Labor Relations Act does not authorize employees to act in disregard of the rights of their employer to maintain discipline and efficient production. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Fabri-Tek, Incorporated v. N. L. R. B., 352 F.2d 577 (1965). Accordingly, the Company argues that Kropp's statements to her fellow employee Blakely that the Union would now step in and compel the Company to pay union wages was clearly false and was disruptive of discipline and efficient production. However, News-Texan admits that these statements may not have been deliberately false with the intent maliciously to injure the Company.

First, it should be observed that these statements by Kropp may not have been false. In order to maintain wage standards at the Dallas Morning News, the Union might have pressured the Company to pay union wages without actually seeking to represent its employees in collective bargaining. Picketing is a prime example of how area wage standards are preserved. Additionally, this one incident that involved only one employee was in no way disruptive or destructive of employee discipline. We are cognizant of Caterpillar Tractor Co. v. N. L. R. B., 230 F.2d 357 (7 Cir. 1956) in which it was stated that a company "was under no compulsion to wait until resentment piled up and the storm broke before it could suppress the threat of disruption * * *." However, there is no evidence that this was the dark cloud before the storm nor does it appear that Kropp's remarks were but conversation with a friend and co-worker.

Blakely was the person who had been assigned to assist Kropp in learning her new job of ad composition when Kropp was given this new work in October.

■ News-Texan presents as its second reason for the discharge Kropp's lack of authority to disclose information regarding company business to any outsider. Heavy reliance is placed upon N. L. R. B. v. Clearwater Finishing Co., 203 F.2d 938 (4 Cir. 1953). In that case a clerk, an office employee and not a plant employee, disclosed the employer's private files with which he was charged with custody. The court determined:

"The evidence shows that Hutto, an employee in respondent's shop, prevailed upon Livingston, an employee in its office, to furnish him information from the *files in the office* which he desired to use against respondent in the hearing of the charge which was then pending against it. The Board held that the conduct of Livingston in furnishing this information from the *company's files* was sufficient ground for his discharge. We think that the same was true of the conduct of Hutto who induced Livingston to furnish it. * * * Hutto was discharged because he had been engaged in *improperly abstracting* information from the *company's private files* to use against it." [Emphasis supplied].

■ *Clearwater* involved improper procuring of private files. However, in the case at bar, Kropp was informed of the impending work transfer by a company supervisor, and there is no assertion that she engaged in misconduct in obtaining the information. Johnson, the company president, admitted that he was not hiding this information but had simply not told everyone. Additionally, he did not know what harm could have come from the disclosure, stating that it was a matter of normal business operation. Moreover, Kropp was interested in becoming a member of a union and she was clearly within the protection of Section 7. As was stated in N. L. R. B. v.

J. G. Boswell Co., 136 F.2d 585 (9 Cir. 1943), and approvingly cited in Signal Oil & Gas Co. v. N. L. R. B., 390 F.2d 338 (9 Cir. 1968):

"a discharge of non-union employee because of a * * * belief that he was sympathetic to, or active in a union violates [section 8(a) (1) and 8 (a) (3)] * * *. The fact that the alleged union activity extends 'outside his own employment' is immaterial."

Kropp admittedly hoped to work for a unionized Dallas paper and was using this job as a stepping-stone. She legally had a right to aid the Union by communicating this information to its officials.

The Board properly acquiesced in the Trial Examiner's revocation of the settlement agreement, and there is sufficient evidence in the record to support the Board's finding that News-Texan violated Section 8(a) (3) and (1) of the National Labor Relations Act.

Order enforced.

GODBOLD, Circuit Judge (concurring in part and dissenting in part):

I would not enforce, and would set aside, that portion of the Board's order which set aside the settlement agreement of the parties. The Trial Examiner found that nothing in the speech and letter violated the Act. But he found they "were not justified by the fact that they were true" because "the point is not whether the communication is a truthful or fair report; but whether there is a right to communicate beyond the express form of communication worked out, agreed upon and approved." He concluded that limitation on the right of free speech or communication was not involved, because the parties may agree upon and declare the extent of their communication.

It seems to me Alice in Wonderland to say that an employer may not, under his free speech privilege, make statements which are true and fair and do not otherwise violate the Act, revealing that he was induced to offer reinstatement

and back pay by representations of the Board that they would not be accepted. I have considerable question whether the Board properly may induce an employer to enter a settlement by representing to him that it will be no more than a facade of words. But, if the Board does so, the courts need not, in the name of purchasing industrial peace, bar the employer from explaining that he was willing to play the charade because he was told that it would be harmless to him.