**SKAGGS PAY LESS DRUG STORES,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71-1926.

United States Court of Appeals,
Ninth Circuit.

Aug. 28, 1972.

Don T. Hibner, Jr. (argued), of Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for petitioner.

Stephen C. Yohay, Atty. (argued), Abigail Cooley Baskin, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, NLRB, Washington, D. C., Alan Berkowitz, Counsel for the Gen. Counsel, NLRB, Region 20, San Francisco, Cal., for respondent.

Before BARNES and MERRILL, Circuit Judges, and MURPHY,* Senior District Judge.

MURPHY, District Judge:

This is a petition by Skaggs Pay Less Drug Stores ("Skaggs") to review and set aside orders issued against it by the National Labor Relations Board ("Board") on March 3, 1971 and May 25, 1971, and a cross-application by the Board for enforcement of such orders. The Board's Decision and Order is reported at 188 NLRB No. 116, and its Order Denying the Motion to Reopen the Record and Reconsider the Decision and Order is reported at 190 NLRB No. 104.

* Honorable Thomas F. Murphy, Senior United States District Judge, sitting by designation.

The issues on review are (1) whether the Board's findings that Skaggs discharged employees Anderson and Marchewka for discriminatory reasons in violation of Section 8(a) (3) and (1) of the Act (29 U.S.C. § 158(a) (3) and (1)) were supported by substantial evidence on the record as a whole, and (2) whether the Board's finding that Skaggs had threatened employee Thayer with loss of employment benefits to discourage her from choosing a collective bargaining representative (as did the Trial Examiner) constitute a single isolated incident not in violation of Section 8(a) (1) of the Act (29 U.S.C. § 158(a) (1)).

The employees involved were employed in the accounting department of Skaggs, which operates a large chain of drug stores in California, and until 1968 were represented by an independent Union (Association). In late 1968 a teamster local started a campaign to replace the Association as the employees' bargaining representative. The first election resulted in a tie. Before the runoff election two weeks later the Trial Examiner found that employee Thayer was threatened with loss of merit wage increases by Skaggs' General Counsel in order to discourage her from supporting the teamster local. The Board's finding that such activity violated Section 8(a) (1) is amply supported by substantial evidence and in fact is not seriously contested by petitioner other than repeating what the Trial Examiner stated, that it was an isolated violation. This conclusion is invalid in view of the later violations hereinafter discussed.

The Trial Examiner found that Skaggs did not discharge employees Anderson and Marchewka for discriminatory reasons, but the Board reversed. Thus, the principal issue on review is whether there was substantial evidence on the record to sustain such a finding. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). This question, in turn, is to be resolved by determining whether the reasons given by the company for their discharge were the real reasons or a mere pretext. Aeronca Manufacturing Company v. N.L.R.B., 385 F.2d 724, 727 (9th Cir. 1967).

The tie election of February 13, 1969, did not end the confrontation between Skaggs and the teamsters. Unfair labor practice charges were filed by the Union against Skaggs on April 2, 1969, involving the discharge of yet another employee. On April 17th the Union amended the charge, claiming that the company had hired an employment agency to screen all new employees so as to insure that no union sympathizers were hired. Subsequently a settlement agreement was reached and approved on June 16, 1969, by the Regional Director disposing of most of the issues, but he later withdrew his approval on October 28, 1969, on the ground that Skaggs had failed to fully discharge some of the obligations under the settlement agreement. In the meantime, the results of the run-off election were not formally announced until August 4, 1969, which was the date that both employees Anderson and Marchewka were discharged.

The Board, in a thorough and detailed analysis of the evidence, came to the opposite conclusion (Miller dissenting) of the Trial Examiner as to the inferences to be drawn therefrom. With reference to Anderson it found:

"On this factual sequence alone, we would find that Anderson's discharge was motivated by Lett's fear that she was about to instigate new employee interest in unionization just as Respondent was closing the books on the February elections. Lett's shifting explanations of the reason for the discharge; his admitted knowledge of Anderson's remark favoring the Union; the fact that Lett viewed the discharge of Anderson in a light which made it seem appropriate for him to discuss it with Green, another known union adherent; and the 'iron fist in a velvet glove' nature of the conversation with Green, including the admonition against further 'union problems'—all of these facts preponderate in favor of the General Counsel's theo-

ry of unlawful motivation. When we add to this convincing array of facts the specific testimony by Green that Lett said he had discharged Anderson for fear of the 'problems that she might create in the future, that she might try to bring union discussion into the office again,' we have no doubt that the discharge of Anderson was an effort to stifle a resurgence of union activity among Respondent's employees. Accordingly, we find that the termination of Anderson violated Section 8(a)(3) and (1) of the Act.[4]

4. In so finding, we reverse the Examiner's finding of fact that Lett went to the payroll office to have Anderson's check drawn 'immediately' after his first conversation with Anderson on August 8. According to the chronology which we believe the evidence compels, Lett would not have decided to discharge Anderson until later in the day, after knowledge of Anderson's prounion comment to Burgess was relayed to Lett." (188 NLRB No. 116, p. 11)

■ We agree, and would not, if we could, "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); Exber, Inc. v. N.L.R.B., 390 F. 2d 127, 130 (9th Cir. 1968).

With reference to Marchewka, the Board found:

"The abrupt, checkless termination of an employee with nearly 10 years' service, without prior warning, and without having secured a replacement for her, after what could have been only a brief survey of an as yet incomplete audit of her work, seems to us, in the other circumstances of the case discussed above, to raise an inference that the reason for discharge now urged by Respondent is but a pretext seized upon to cloak the more obvious antiunion motivation. Accepting the Trial Examiner's assessment of Lett as a man who had 'as-

sumed his duties with the resolute purpose of improving the internal functioning of the department,' and noting the uncontradicted testimony that Lett discharged four other employees in the course of his reorganization, we are still persuaded, by the particular facts surrounding Marchewka's discharge, that her termination was designed to combat unionism at least as much as to combat inefficiency. Having found that the discharge of Marchewka violated Section 8(a) (3) and (1), we shall order the customary remedy for her.[6]

6. In view of our conclusion that Respondent violated Section 8(a) (3) and (1) by discharging Anderson and Marchewka, thereby breaching its June 13, 1969, settlement agreement and permitting the Board to find violative certain conduct covered by that agreement, we deem it unnecessary to consider the Trial Examiner's conclusion that Respondent's explanatory notice constituted a breach of that agreement under the rule of Bangor Plastics, Inc., 156 NLRB 1165, enforcement denied 392 F.2d 772 (C.A.6).

Furthermore, in the light of our findings herein, we shall reject the Trial Examiner's recommendation that the threat made to employee Thayer in February 1969 not be remedied because it was an 'isolated' incident and we shall order the appropriate remedy." (188 NLRB No. 116, pp. 19–20)

■ Although not briefed, we were asked on oral argument by petitioner to remand to the Board for it to receive additional evidence with respect to the termination of the employment of Anderson and Marchewka. A review of the record convinces us that Skaggs had ample opportunity to respond to the General Counsel's contention that it did not establish that there existed the "extraordinary" circumstances which warranted the reopening of the record. In addition, it found that the proffered evidence, even if introduced, would not change its findings. Accordingly, such motion is denied.

The petition to review is denied, and the Board's orders should be enforced.