**VIRGINIA ELECTRIC AND POWER COMPANY, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–1130.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided March 15, 1983.

Phillips, Circuit Judge, filed dissenting opinion.

James A. Harper, Jr., Richmond, Va. (A. Neal Barkus, Michael H. Corley, Hunton &

Williams, Richmond, Va., on brief) for petitioner.

Catherine Garcia, Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief) for respondent.

Before PHILLIPS and CHAPMAN, Circuit Judges, and WALTER E. BLACK, Jr., United States District Judge sitting by designation.

CHAPMAN, Circuit Judge:

Virginia Electric and Power Company (VEPCO) petitions this court for review of the order of the National Labor Relations Board (NLRB) finding it in violation of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (NLRA). Because the Board's decision is unsupported by substantial evidence, we deny enforcement of the order.

I

Virginia Electric and Power Company is a public utility that generates, sells and transmits electricity throughout the tri-state area of Virginia, West Virginia and North Carolina. It employs approximately 10,500 workers. Of these, the Utility Employees Association (UEA) represents about 3,300 office, technical and professional employees. The 4,300 maintenance and production employees are represented by the International Brotherhood of Electrical Workers (IBEW).

In late 1979, some of the office employees organized a movement to unseat the UEA as bargaining agent and replace it with the IBEW. Only about 200 employees signed cards favoring the IBEW.

On June 30, 1980, the IBEW filed a charge with the NLRB alleging that VEP-CO had taken certain discriminatory actions against pro-IBEW employees. The NLRB filed a complaint against the company on August 12, 1980. In its complaint the NLRB alleged that the Company had engaged in unfair labor practices by the following:

(1) telling employees they were denied promotions because of union activities;

(2) prohibiting employees from discussing the union during non-working time;

(3) interrogating employees about their activities on behalf of the union;

(4) telling employees that sick leave benefits were the same under the UEA and IBEW contracts;

(5) instructing employees to remove union buttons;

(6) discontinuing certain job assignments; and,

(7) altering and reducing sick benefits to discourage support of the union.

On March 25 and 26, 1981 a hearing was held before an Administrative Law Judge (ALJ). After hearing all the testimony and viewing all the witnesses, the ALJ dismissed the complaint stating that:

[g]iven the size of the Company, the great number of employees involved, and the fact that no substantive unfair labor practices had [sic] been found, I will recommend instead dismissal of the complaint in its entirety.

General counsel and the IBEW filed exceptions to his decision to dismiss the complaint. On February 22, 1982, the NLRB issued its Decision and Order. The decision adopted the ALJ's findings of fact but modified his conclusions.[1]

---

1. The ALJ concluded that a supervisor telling Van Burin not to wear the vari-vue button while on duty in a public area *might* be a technical violation of the NLRA, however, he stated "even were I to find" it a violation, it "would not warrant a full Board hearing and restraining order." Therefore, the only act by the Company he found to be in violation of the

NLRA was a "technical" violation of § 8(a)(1) that occurred when a supervisor told employee New "one reason for not assigning New to another position was not to encourage IBEW activities." This violation was, in his opinion, not a substantive unfair labor practice, so he dismissed the complaint. The facts and cir-

Unlike the ALJ, the Board found that VEPCO violated section 8(a)(1), 29 U.S.C. § 158(a)(1) (1976), by telling employee Robin Van Burin that the Company would prefer she not wear her vari-vue button while working in the lobby area. The NLRB also found that VEPCO violated section 8(a)(1) and section 8(a)(3), 29 U.S.C. § 158(a)(3) (1976), when it failed to "promote" Tanya New to "back-up" clerk because of her union activities. Because the ALJ and the Board differ in their conclusions of law, but not on the facts, we shall set forth the facts of each alleged violation in detail.[2] The two incidents in question will be addressed separately.

## II

In May of 1980, Robin Van Burin, a customer contact representative, began wearing a "vari-vue" button that stated, "Keep your eye on IBEW. We will win." The button was two inches in diameter, brightly colored (red, blue and white) and a large eye that gave the appearance of winking at one viewing the button occupied the upper left portion of the button (this was the vari-vue feature). Van Burin and others wore this button, as well as other buttons, without challenge from the Company.

In July of 1980, Van Burin's supervisor requested that she serve as a part-time switchboard operator and receptionist. This position entailed sitting in the public lobby of the Mark Center in Alexandria, Virginia where she answered the switchboard and dealt with customers, salesmen and applicants for employment. Because the lobby is next to the only entrance to the building, all employees entering the building must pass by the lobby as well.

It was at this time that Van Burin's supervisor made the statement that has created this controversy. The supervisor stated to her that VEPCO would prefer her not to wear this particular button while on duty at the switchboard. This is the only evidence of any interference by the employer with any employee wearing any union insignia. In fact, the ALJ specifically found, and the NLRB adopted the finding, that "[p]eople wore buttons all over the place, and no one was ever criticized for it." Further, the ALJ found that management testified "that no one would suffer discrimination, or any kind of restraint, because of their such [sic] activities." These findings are most persuasive when one examines the facts.

Van Burin continued to wear the button and suffered no reprisal or reprimand; therefore, she was not prohibited from wearing union insignia.[3] Others wore the button, as did Van Burin, in private areas of the building without being questioned or criticized. There was no general ban on the wearing of union insignia, merely a request that while on duty where she would be making face-to-face contact with the general public that she not wear a particular button. Thus, the issue to be decided is whether such evidence supports the NLRB's conclusion that the supervisor's statement of VEPCO's preference that she not wear one particular button is a violation of section 8(a)(1).

There can be no question that employees have the right to wear buttons or other union insignia to express union sup-

---

cumstances will be developed within the body of this opinion.

**2.** We recognize that we are limited in our review of the Board's decision. In this case, however, there is no dispute that involves the findings of fact. Rather, the issue is whether the NLRB reached the correct conclusion of law upon these facts. *Davison-Paxon Co. v. NLRB,* 462 F.2d 364, 372 (5th Cir.1972). This court stated recently in *Weirton Steel v. NLRB,* 689 F.2d 504 (4th Cir.1982) that "a reviewing court is not barred from setting aside a National Labor Relations Board decision when it can-

not conscientiously find the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [the] Board's view. 689 F.2d at 507 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

**3.** After a two month period she was relieved of her duties as part-time switchboard operator. The ALJ noted, however, that General Counsel for the NLRB "stated clearly there is no contention this removal of the girl from that job was in any way illegal . . . ."

port while on the job. *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 802 n. 7, 65 S.Ct. 982, 987 n. 7, 89 L.Ed. 1372 (1945). This practice furthers "the right effectively to communicate with *one another* regarding self-organization at the jobsite." *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 491, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978) (emphasis added). The right to wear such insignia is not without limitation; rather it is clear

> [The Board must adjust] the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee.

*Beth Israel,* 437 U.S. at 492, 98 S.Ct. at 2469 (quoting *Republic Aviation Corp.,* 324 U.S. at 797–798, 65 S.Ct. at 985.) Therefore, the determination whether the employer's restriction is lawful requires an accommodation of the conflicting interests of employee self-organization and the employer's right to maintain proper discipline in the workplace. *Republic Aviation,* 324 U.S. at 798, 65 S.Ct. at 985; *Fabri-Tek, Inc. v. NLRB,* 352 F.2d 577, 584–5 (8th Cir.1965). Because the "wearing of union buttons [is not] per se a guaranteed right," *NLRB v. Harrah's Club,* 337 F.2d 177, 179 (9th Cir.1964), the employer may "prohibit or regulate the wearing of union insignia where . . . there are special considerations relating to employee efficiency and plant discipline." *Fabri-Tek,* 352 F.2d at 585. VEPCO advances "special considerations" it contends will justify its preference.

First, they argue that all employees entering this building had to pass by this lobby where they could easily see the button. Because they were concerned that the button might provoke a confrontation between Van Burin and a supporter of the UEA in front of customers coming in to complain about their bills or service, salesmen or job applicants, they submit they

were justified in attempting to avoid such a confrontation to protect their public image and to avoid public confrontations by supporters of the different unions. The ALJ found that the Company's argument was a legitimate one and that it had the right to keep employees quarreling among themselves about the two unions out of the public eye. This conclusion by the ALJ is supported both by the *Beth Israel* case where the Supreme Court stated that the employees' right is to communicate with *one another,* 437 U.S. at 491, 98 S.Ct. at 2468–69, and the fact that a company has the right (and duty) to anticipate such potential disturbances and act to prevent them. *Fabri-Tek,* 352 F.2d at 584; *Harrah's Club,* 337 F.2d at 180; *Caterpillar Tractor Co. v. NLRB,* 230 F.2d 357 (7th Cir.1956).

Second, VEPCO submits to this court that its actions were legal because the actions were reasonable. It did not ban the wearing of any button or union insignia, it merely requested that the employee wear a "smaller, less gaudy" button while on duty as a receptionist. Van Burin continued to wear the button in question and suffered no reprisal. Others wore the button in private areas without comment by VEPCO. They argue that in light of the provocativeness of the button, the existence of competing unions and the limited nature of its restriction, it has shown the special circumstances necessary to justify its actions, as well as showing it acted reasonably.

■ We agree with the ALJ. This is not a case where the employer has attempted to ban all union insignia, even a small pin, like an ordinary civic club pin, when there is no competition between either competing unions or union and nonunion supporters. *See, Pay'N Save Corp. v. NLRB,* 641 F.2d 697 (9th Cir.1981); *NLRB v. Floridan Hotel of Tampa, Inc.,* 318 F.2d 545 (5th Cir.1963). This was merely a statement of preference that an employee not wear a large, brightly colored, and potentially provocative button while on duty in a public lobby where all employees and the general public enter the building. *Fabri-Tek,* 352 F.2d at 586 (up-

holding employer's objection to employees wearing IBEW vari-vue buttons when employer did not ban all buttons). This was a situation where there could have been a public conflict between supporters of competing unions, *Davison-Paxon Co. v. NLRB,* 462 F.2d 364 (5th Cir.1972); therefore, the employer was not required to wait until a disturbance actually occurs before taking reasonable steps to maintain employee discipline and efficiency. *NLRB v. Harrah's Club,* 337 F.2d 177 (9th Cir.1964); *Caterpillar Tractor Co. v. NLRB,* 230 F.2d 357 (7th Cir.1956). In light of the fact that the employee was not forced to remove the button, or discharged for refusing to do so, and the ALJ's findings that employees were not prevented from wearing buttons, nor criticized for doing so, and the fact that management had given assurances that no one would suffer either discrimination or restraint for wearing union insignia, we fail to see how these facts, as found by the ALJ and adopted by the Board, can support a reasonable inference that the Company violated section 8(a)(1).

■ The NLRB, however, advances two arguments in support of its conclusion. First, it argues that the employer is required to show that some actual confrontation, disturbance or violence has occurred before it may regulate the wearing of union insignia. As we have shown above, this is not the rule; the employer must show that there are special circumstances that justify its actions to maintain employee discipline and efficiency. *Davison-Paxon; Fabri-Tek; Harrah's Club; Caterpillar Tractor Co.* To adopt the NLRB's rule would be to subsume the employer's right to make decisions on how to maintain discipline in their establishments until an actual confrontation oc-

curs. This would not be an adjustment of the right of self-organization and the right to maintain discipline. *Beth Israel; Republic Aviation Corp.*

Second, the NLRB argues that *Pay'N Save* and *Floridan Hotel of Tampa* support its conclusion that VEPCO's actions were violative of section 8(a)(1). These cases are distinguishable because the employer attempted to ban *all* union insignia and because there was no potential conflict between either union and anti-union supporters or rival unions. Therefore, we can find no substantial evidence that supports the Board's conclusions on these facts.

### III

Tanya New is a bookkeeper in the accounting department of VEPCO. The organizational hierarchy in the department, listed in descending rank, is as follows: (a) one supervisor; (b) three assistant supervisors; (c) three senior clerks; and (d) twenty-one bookkeeper clerks. The senior clerks each have a bookkeeper that assists with the workload for approximately one hour per day. Informally, these clerks are known as "back-up clerks", however, there is no official capacity as such.[4] The benefit attached to this additional responsibility is the increased likelihood of a promotion to senior clerk when such a position becomes available.

On January 1, 1980, a senior clerk position was filled by an employee who had been a "back-up clerk."[5] New was not assigned the duties of "back-up" clerk despite the fact that she assumed she would receive the assignment. Over one month later, during her March evaluation by the assistant supervisor, New, for the first

4. The NLRB found that VEPCO had violated § 8(a)(1) by denying a promotion to New. Technically this finding is in error. There is no official position within the Company known as a "back-up" clerk to be promoted to. The bookkeeper who takes on these responsibilities receives more work, but no additional pay. The reason that the position is sought is not because it is a promotion, but because performing these additional duties may enhance the probability of a promotion to senior clerk.

5. All three people who are involved in this dispute, the old back-up clerk, the new back-up clerk, and New, were open and active IBEW supporters. They all wore IBEW buttons at work. In his decision, the ALJ stated that management knew of the union activities of all three women. The old back-up clerk was promoted to senior clerk and New's co-worker, and union supporter, received the "back-up" clerk assignment.

time, asked why she did not receive the assignment. The supervisor gave her the three reasons that follow:

(1) because there were problems with some of the "girls" in the office and that it was hoped assigning these duties to Galvin instead of New would smooth things over;

(2) "they" did not want New working closely with the senior clerk; and

(3) because the supervisor was aware that New was "working so hard with the IBEW campaign, that she did not want to put any more of a strain on [her]."

The ALJ found the supervisor's statement that she considered New's IBEW activities when making a managerial decision was a violation of section 8(a)(1). Because he could find no substantive unfair labor practices, however, he recommended that the complaint be dismissed. He also concluded that New and Galvin were equally active IBEW supporters; therefore, he could find no illegal discrimination to discourage union activities when the Company chose between the two.

The NLRB agreed with the ALJ's conclusion that the statement to New was a violation of 8(a)(1); however, they also found that the decision not to "promote" New was a violation of 8(a)(1) and 8(a)(3). They reversed his decision to dismiss the complaint.

This case is another in the line of dual motivation cases that arise when an employer takes an action against a union supporter (usually the action is to discharge the employee) wherein the employer acts with both good cause, here to maintain office harmony, and with bad cause, to discourage union activity generally. It does not present us with the usual set of facts.

Generally these cases have arisen when a union is attempting to organize a non-union work force. Here, the contest was between two unions, both of whom already represented some segment of the employees.

Also, in most cases the employee has been discharged; that is not the case here.

The employer advanced a legitimate reason for not assigning the extra duties to New, the need to smooth over interoffice tensions. VEPCO thought this could best be accomplished by assigning these duties to Galvin rather than New.

When an employer has a " 'supportable cause' for discharging an employee involved in an 8(a)(3) claim . . . the burden shifts to the Board to find and identify 'an affirmative and persuasive reason why the employer rejected the good cause and chose the bad one,' that is, why he rejected the 'supportable' cause and 'chose a cause intended to discourage union activity.' "[6] *NLRB v. Appletree Chevrolet, Inc.*, 608 F.2d 988, 993 (4th Cir.1979). *See, Proctor & Gamble Mfg. Co. v. NLRB*, 658 F.2d 968, 980 (4th Cir. 1980); *NLRB v. Burn Motor Freight, Inc.*, 635 F.2d 312, 314 (4th Cir.1980); *Firestone Tire & Rubber Co. v. NLRB*, 539 F.2d 1335, 1337 (4th Cir.1976); *NLRB v. Patrick Plaza Dodge, Inc.*, 522 F.2d 804, 807 (4th Cir.1975). The Board has not met its burden of showing an affirmative and persuasive reason why the employer chose a bad reason for his motive; in fact, the evidence militates against such a conclusion.

The woman chosen to serve as a back-up clerk was also a known and active union supporter whom the ALJ found was equally as active as New in such support. He concluded that choosing between two equally active supporters could not be evidence of illegal discrimination. Further, the evidence shows that New neither asked for the assignment nor complained when someone else received the assignment. She waited over one month until her review to ask why she did not receive it. Finally, VEPCO has advanced a legitimate reason for not assigning the additional responsibilities to New, an attempt to increase interof-

---

**6.** The NLRB argues that we should adopt the burden-shifting test they formulated in *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), one that was rejected by the First Circuit. *NLRB v. Wrightline*, 662 F.2d 899, 904–907 (1st Cir.1981). This court refused to consider that test in *NLRB v. Burns Motor Freight, Inc.*, 635 F.2d 312, 315 (4th Cir.1980) because it did not need to do so to reach its result. We likewise do not find it necessary to resolve the issue to reach our result here.

fice harmony. Therefore, we find the ALJ was correct in recommending dismissal of the complaint.

The NLRB takes issue with the Company's argument and the ALJ's conclusion that, because no substantive unfair labor practices occurred, the complaint should be dismissed. The Board postulates the argument that it is required to issue a cease and desist order for any violation of the NLRA, regardless of its magnitude. As this court stated in *NLRB v. Pilot Freight Carriers, Inc.,* 558 F.2d 205 (4th Cir.1977), an isolated incident in a company, without evidence of any other violations by the company, does not "require the entry of a formal cease and desist order . . . ." 558 F.2d at 214.

### IV

As stated above, we find no substantial evidence that supports the Board's conclusion that the request to Van Burin that she not wear the button was a violation of 8(a)(1). The Board has also failed to show any affirmative and persuasive reason why the employer chose a bad or discriminatory motive when it refused to assign certain job responsibilities to New. Because we find that there is no substantial evidence on the record as a whole to support the Board's order, we deny enforcement.

ENFORCEMENT DENIED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

I dissent from that part of the majority opinion that rejects the Board's determination that VEPCO violated § 8(a)(1) by urging employee Van Burin not to wear union insignia while on duty in the lobby of VEPCO's Alexandria, Virginia, office.

Faced with a finding of violation that involved nothing more drastic than an employer's unheeded request that one employee not wear a pro-union button in a limited area, the temptation is undoubtedly great to reject it as involving, in any event, a matter *de minimis.* With all respect I believe that this must be the actual basis of the majority decision on this issue. However appealing to one's sense of proportion such an assessment might be, this is not the standard by which we are bound to review Board determinations. Under the proper standard, I do not believe that we can properly reject the Board's determination of violation.

Though the button episode here in issue may indeed seem trivial in the overall sweep of labor-management relations, the controlling legal principle that it invokes is not. Indeed it is one of the most basic. Under § 8(a)(1) employees have an enforceable right to display union insignia unless there are "special considerations" that justify an employer's restriction of the right. *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *Pay'N Save Corp. v. NLRB,* 641 F.2d 697, 700 (9th Cir.1981); *NLRB v. Montgomery Ward & Co.,* 554 F.2d 996, 1000 (10th Cir. 1977).

This principle—which the majority recognizes as controlling—embodies an evaluative standard whose application to particular facts lies quintessentially within the Board's special competence, based upon its recognized "cumulative experience in dealing with labor-management relations," *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975), to assess the true nature and implications of particular labor disputes. Indeed, it is difficult to imagine an evaluative task more difficult and subtle in this special realm than that of balancing in particular fact situations the conflicting interests of employee rights to self-organization and employer rights to maintain proper discipline. *See Republic Aviation,* 324 U.S. at 797–98, 65 S.Ct. at 985. It is for this reason that in such matters we have been reminded that the Board's determination is subject only to "limited judicial review." *NLRB v. Truck Drivers Local Union No. 449,* 353 U.S. 87, 96–97, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957).

Here the Board's evaluative judgment was that the employer's attempted restriction on the basic employee right was not justified by any special considerations giv-

ing primacy to the employer's conflicting interest. Certainly that determination is not for any reason erroneous as a matter of law. And the basic facts are simply not in dispute.

The fact that VEPCO had not promulgated any company-wide restriction of the type in issue—a point upon which the majority relies—does not preclude a finding of violation. An individual restriction on insignia display may constitute an unfair labor practice. *See, e.g., NLRB v. Intertherm, Inc.,* 596 F.2d 267, 272–73 (8th Cir.1979). Neither does the fact that the employee refused to comply with the employer's request preclude a finding of violation. *Id.* at 271; *Sturgis Newport Business Forms, Inc. v. NLRB,* 563 F.2d 1252, 1256 (5th Cir.1977).

Neither can the Board's determination be attacked as legally erroneous on precedential grounds. To the extent any general rule of "special considerations" can be synthesized from relevant judicial decisions, it is not a rule that precludes the Board's determination of violation on the facts of this case. The decisions relied upon by the majority—presumably as establishing such a rule—are to me clearly distinguishable in critical respects.

One involved a ban on buttons that tended to distract employees who needed extraordinary concentration to manufacture computer memory units. *Fabri-Tek, Inc. v. NLRB,* 352 F.2d 577 (8th Cir.1965). Another dealt with a ban on "inherent[ly] disruptive" buttons reading "Don't be a Scab." *Caterpillar Tractor Co. v. NLRB,* 230 F.2d 357 (7th Cir.1956). Still another was concerned with a restriction on union insignia that simply carried out an employer's long-standing, strict dress code. *NLRB v. Harrah's Club,* 337 F.2d 177 (9th Cir.1964).

Perhaps most critically, because its facts probably are closest in point, *Davison-Paxon Co. v. NLRB,* 462 F.2d 364 (5th Cir.1972), is distinguishable in critical respects. There a department store's asserted concern that its employees would engage in public confrontations damaging to the employer's interests was held to constitute "special considerations" justifying an insignia restriction. But the *Davison-Paxon* court emphasized two aspects of that case not present here. The buttons in question violated a long-standing dress code. Even more importantly, the court could emphasize that though, as here, no actual employee disputes had occurred, the unchallenged evidence of employee animosity and tension substantiated the "*reasonableness* of the management's fear that union conflict might erupt on the sales floor." *Id.* at 369 (emphasis added). *See also Caterpillar Tractor,* 230 F.2d at 359; *Adams v. Federal Express Corp.,* 470 F.Supp. 1356, 1363 (W.D. Tenn.1979) (interpreting analogous provision of the Railway Labor Act, 45 U.S.C. § 181).[1]

In the instant case, there is of course no dress code, no highly technical job requiring freedom from distraction, and no inherently disruptive message. Nor, most critically, is there any evidence to substantiate the reasonableness of the employer's asserted apprehension that the rather innocuous button "might provoke" a public confrontation between rival union supporters.

The majority makes the point that an employer should not be required to await an actual disturbance before imposing restrictions on particularly disruptive union activities. I fully agree with this. But I also believe that, as *Davison-Paxon* emphasized, an employer should not be entitled to invoke mere apprehension of disruption as a "special consideration" justifying restric-

---

1. The majority's reliance on *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), appears to me to be wholly misplaced. *Beth Israel* simply approved the Board's qualified extension to a hospital setting of the principles enunciated in *Republic Aviation.* Significantly, the *Beth Israel* Court indeed deferred to the Board's judgment in that case that hospital employees might engage in protected union activities in the hospital cafeteria, notwithstanding the hospital employer's assertion that such activities would disturb its patients. To the extent that *Beth Israel* is apposite here, its greatest significance lies in its emphasis upon the limited role of the courts in reviewing this sort of Board determination. *See id.* at 500–01, 504–05, 98 S.Ct. at 2473, 2475–76.

tions without some objective proof of a reasonable basis for the apprehension. *See Beth Israel Hospital v. NLRB*, 437 U.S. 483, 502–03, 98 S.Ct. 2463, 2474–75, 57 L.Ed.2d 370 (1978); *Pay'N Save*, 641 F.2d at 701 (no special considerations where employer merely concerned with public image); *Larand Leisurelies, Inc. v. NLRB*, 523 F.2d 814, 816–17 (6th Cir.1975) (no special considerations where employer feared disruption of production and efficiency). Vague apprehensions are too easily asserted in almost any of the situations giving rise to this particular issue.

In short, I simply see no basis upon which, if we are faithfully to apply the appropriate standard of review, we can reject this determination. I would enforce the Board's order directed at this violation.