Gary LEE; James Amburn, Petitioners,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Communications Workers of America; BellSouth Telecommunications, Incorporated, Intervenors.**

No. 01–2075.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 26, 2002.

Decided: Jan. 4, 2005.

---

---

ARGUED: John Connor Scully, Jr., National Right to Work Legal Defense Foundation, Springfield, Virginia, for Petitioners. Richard A. Cohen, Senior Attorney, National Labor Relations Board, Washington, D.C., for Respondent. Steven T. Breaux, BellSouth Corporation, Atlanta, Georgia, for Intervenor BellSouth. James Bryan Coppess, Washington, D.C., for Intervenor CWA. ON BRIEF: Arthur F. Rosenfeld, General, John E. Higgins, Jr., Deputy General, John H. Ferguson, Associate General, Aileen A. Armstrong, Deputy Associate General, National Labor

Relations Board, Washington, D.C., for Respondent. Michael Carlin, Washington, D.C.; John L. Quinn, Decatur, Georgia; Laurence Gold, Washington, D.C., for Intervenor CWA.

Before WIDENER and LUTTIG, Circuit Judges, and HERLONG, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Vacated and remanded with directions by published opinion. Judge WIDENER wrote the opinion, in which Judge LUTTIG and Judge HERLONG concurred.

WIDENER, Circuit Judge:

Petitioners Gary Lee and Jim Amburn petition for review of a National Labor Relations Board (NLRB or the Board) Decision and Order dismissing their complaint against BellSouth and Communications Workers of America, AFL–CIO (CWA). Lee and Amburn assert that the uniform logo policy of BellSouth and the CWA, requiring employees to wear both the BellSouth logo and the union logo, violates Section 7 of the National Labor Relations Act (NLRA or the Act), 29 U.S.C. § 157, in that it interferes with an employee's right to refrain from concerted union activity. Alternatively, Lee and Amburn contend that even if there is no Section 7 violation, compelling employees to wear the union logo violates the employees' freedom of speech and association under the First Amendment. Although the Board concluded that placement of the CWA logo on company uniforms implicates Section 7 interests, the Board found that the collectively bargained uniform policy was a "special circumstance" which out-

weighed any intrusion on Section 7 rights and accordingly dismissed the complaint.

For the reasons that follow we grant the petition for review, vacate the Board's Order dismissing the complaint, and remand with directions to the Board to modify its order consistent with this opinion. Because we hold that the BellSouth–CWA policy expressed in the Collective Bargaining Agreement violates 29 U.S.C. § 157, we do not reach the First Amendment question.

I.

BellSouth and the Communications Workers of America (CWA) have had a longstanding collective bargaining relationship since the 1940's. The company and the union entered into a collective bargaining agreement effective August 6, 1995 to August 8, 1998. The agreement required employees in specified job classifications, primarily telecommunications, and those who had contact with the public to wear a uniform bearing both the BellSouth logo and the CWA logo. The uniform program is mandatory for all employees in specified job categories, whether they are members of the union or not, and those who do not comply with the uniform requirement are subject to discipline.

Petitioners Gary Lee and Jim Amburn, who are not union members, were among those employees of BellSouth required to wear the uniform displaying both the company and the union logos. Lee and Amburn objected to wearing the union insignia and filed unfair labor practice charges against BellSouth and CWA. The two complaints, alleging that BellSouth had violated Section 8(a)(1), (2), and (3) of the NLRA and that CWA had violated Section 8(b)(1)(A) and (2) of the Act,[1] were consoli-

---

1. Section 8(a)(1) provides that "it shall be an unfair labor practice for an employer to inter-

fere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section

dated by Order of the NLRB General Counsel. The parties entered into a stipulation of facts and, upon a motion to transfer, the parties agreed to submit the consolidated case directly to the Board.

■■■ We have jurisdiction under NLRA Section 10(f), 29 U.S.C. § 160(f), to review the Board's final order, but our review is somewhat limited. See *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We review the Board's findings of fact only to determine whether they are supported by substantial evidence in the record as a whole. See *Universal Camera*, 340 U.S. at 487–88, 71 S.Ct. 456; *NLRB v. CWI of Maryland, Inc.*, 127 F.3d 319, 326 (4th Cir.1997). In reviewing legal conclusions, we defer to the Board's interpretation of the Act "so long as its reading is a reasonable one." *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 409, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996). Although we will not disturb the Board's order if the Board's findings of fact are supported by substantial evidence from the record as a whole, we have recognized that "a reviewing court is not barred from setting aside a National Labor Relations Board decision when it cannot conscientiously find the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [the] Board's view." *Virginia Electric & Power Co. v. NLRB*, 703 F.2d 79, 81, n. 2 (4th Cir.1983) (citing *Weirton Steel v. NLRB*, 689 F.2d 504 (4th Cir.1982), quoting *Universal Camera*, 340 U.S. at 488, 71 S.Ct. 456).

## II.

■■■ Employees have a presumptive right to wear union insignia as part of their Section 7 right to engage in concerted activities related to union organization and collective bargaining.[2] See *Eastern Omni Constructors, Inc. v. NLRB*, 170 F.3d 418, 424 (4th Cir.1999) (citing *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803–04, 65 S.Ct. 982, 89 L.Ed. 1372 (1945)). In its decision, the Board recognized this right as well established under *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). Section 7

7]." 29 U.S.C. § 158(a)(1). Section 8(b)(1)(A) parallels 8(a)(1), except that it refers to unfair labor practices committed by a labor organization, specifically, that "it shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(b)(1).

Section 8(a)(2) states that "it shall be an unfair labor practice for an employer to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." 29 U.S.C. § 158(a)(2).

Section 8(a)(3) of the Act provides that "it shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). The parallel section for labor organizations, Section 8(b)(2), similarly provides that "it shall be an unfair labor practice for a labor organization or its agents to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section." 29 U.S.C. § 158(b)(2).

2. Section 7 of the NLRA provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall *also* have *the right to refrain* from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)." 29 U.S.C. § 157 (italics added).

not only protects employees' right to engage in union activities such as wearing union insignia, it also protects those employees who choose *not* to participate in union activities. It follows then, that if there is a presumptive right to wear union insignia as part of engaging in union activity under Section 7, there is a reciprocal Section 7 right contained in that section's "right to refrain" language to choose not to wear union insignia. "The right to refrain from joining or assisting a union is an equally protected right with that of joining or forming a union." *BE&K Constr. Co. v. NLRB,* 23 F.3d 1459, 1462 (8th Cir.1994) (citations omitted).

■ Although Section 7 embodies both the right to wear union insignia and the corollary right to refrain from wearing union insignia, the Board recognized that rights surrounding the display of union insignia are not absolute and may be abridged when special circumstances exist. See *Eastern Omni Constructors, Inc. v. NLRB,* 170 F.3d 418, 424 (4th Cir.1999). Finding that special circumstances existed in the case at hand, the Board concluded that the uniform policy was lawful. Specifically, the Board found that the mandatory uniform policy advances BellSouth's "public image business objective." It found that placing the BellSouth logo alongside the CWA logo on the uniforms muted any message of individual support the union logo might convey, and that the policy was a product of the collective bargaining process. We find that the Board's conclusions regarding the existence of special circumstances are not supported by substantial evidence.

We have found that regulation of the display of union insignia is warranted where "the employer ... show[s] that there are special circumstances that justify its actions to maintain employee discipline and efficiency." *Virginia Electric and Power Co. v. NLRB,* 703 F.2d 79, 83 (4th Cir.1983); see also, *Eastern Omni Constructors, Inc. v. NLRB,* 170 F.3d 418, 425 (4th Cir.1999) (finding valid safety concerns justified the ban on union decals on hardhats). The Board has also found special circumstances justifying regulation of union insignia in contexts other than employee safety and discipline. "One such 'special circumstance' is where the display of union insignia may 'unreasonably interfere with a public image which the employer has established, as part of its business plan, through appearance rules for its employees.'" *Meijer, Inc. and Local 951, United Food and Commercial Workers International Union,* 318 N.L.R.B. 50, 50 (1995). We are mindful that "[t]he Board has consistently held, however, that customer exposure to union insignia alone is not a special circumstance allowing an employer to prohibit display of union insignia by employees." *Meijer Inc. and Local 951, United Food and Commercial Workers International Union,* 318 N.L.R.B. at 50. So, in this case, the converse is true and the employer may not require display of union insignia for customer exposure alone.

■ Thus, a company may prohibit display of union insignia where such display unreasonably interferes with its established public image. In the inverse case with which we are presented, where a company seeks to require, rather than prohibit, display of union insignia, we safely assume, without deciding, that BellSouth may require the display of the union insignia if the *absence* of the union logo unreasonably interferes with its established public image. But there is no evidence to that effect, not even the stipulation of the parties.

The parties agree that BellSouth's uniform policy was designed to present a professional image to their customers and

the general public and that the company considered a uniform policy to be "a critical aspect of its strategy to succeed in a new competitive environment." BellSouth asserts that the display of the union logo on the uniforms signifies a labor-management partnership which makes service interruptions due to labor disputes less likely and represents that their employees are well-trained, well paid, and more experienced with a stable work environment. The Board agreed that the display of the union logo in conjunction with the company logo "reasonably can be seen to convey a message that BellSouth is a unionized employer and, along with the CWA, enjoys a labor-management partnership, that is, a bargaining relationship characterized by cooperation, not conflict." We disagree that the display of the two logos reasonably conveys the public image BellSouth seeks to project.

There is no evidence that the display of the union insignia conveys BellSouth's intended message. In fact, rather than view the union logo as representing a labor-management partnership which makes labor disputes less likely and a reflection of a stable work environment, the public may view the union logo with suspicion and associate it with service disruptions and labor disputes, see, for example, *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 695, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983), particularly in a right-to-work State such as North Carolina. Furthermore, it is entirely reasonable that a person viewing an employee wearing union insignia would assume that the employee is a union member and supports the union. Indeed, this is the assumption the Board itself has made repeatedly in upholding the Section 7 rights of employees to display union insig-

nia. See e.g., *Leather Center Inc.,* 312 N.L.R.B. 521, 529 (1993)("The wearing of union insignia while at work to express employee solidarity has long been recognized as an exercise of employee rights under Section 7 of the Act.") (citing *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, (1945)); *Electro–Wire Truck & Industrial Products Group,* 305 N.L.R.B. 1015, 1023 (1991) ("Knowledge of the union activities, or sympathies, of [the employees] is not disputed. Each was wearing union insignia at the times of the discharges.")

If non-union members, in exercising their Section 7 right to refrain from union activities, choose not to display the union logo on their uniforms, their actions cannot unreasonably interfere with BellSouth's public image because there is no evidence that particular image is conveyed by the display of the union logo in the first instance. In short, there can be no interference with a message that is not necessarily being conveyed. Therefore, without evidence of special circumstances that show BellSouth's required display of the union logo reasonably conveys its established public image, the intrusion on the Section 7 rights of employees who object to the CWA logo cannot be justified and BellSouth and CWA may not regulate the display of union insignia in contravention of employees' Section 7 rights.[3]

 As additional evidence of the special circumstances that would permit BellSouth and CWA to require display of the union logo, the Board relies on the fact that the context of this dispute involved the "legitimate interests of both the Employer and the Union, as expressed through the collective bargaining process that national labor policy endorses." The

---

**3.** Because we find that the Board's conclusion that special circumstances exist is not supported by substantial evidence, we need

not reach the First Amendment argument raised by Lee and Amburn.

Board accurately notes that "[i]t is a fact of life under the Act that employees opposed to union representation remain members of the bargaining unit, so long as the union enjoys majority support." Granted, as the duly elected bargaining representative, CWA has the authority to waive an employee's statutorily protected rights. See *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705–06, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983). However, "a union may bargain away its member's economic rights, but it may not surrender rights that impair the employees' choice of their bargaining representative. See *NLRB v. Magnavox Co. supra*, at 325, 94 S.Ct. 1099." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705–06, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983).[4]

The fact that the mandatory uniform policy at issue here is a result of collective bargaining does not make it lawful, nor has precedent come to our attention among NLRB cases or our own to suggest that collectively bargained provisions fall within the "special circumstances" that permit the regulation of union insignia. By protecting employees' right to engage in activities supporting a union or to refrain from such support, Section 7 rights are integral to employees' rights to choose their bargaining representative and thus cannot be bargained away by either the union or the company. Even though it may be true that nonunion members are "subject to displays of their bargaining representative's name, initials, logos, and symbols in a variety of everyday contexts"

we are of opinion that being required to display the union logo on your person is fundamentally different than being exposed to the logo on bulletin boards and company forms. Mentioning the same on various papers concerning company and employee business could not reasonably be taken to convey an individual's support of the union, as does the display on the uniform.

### III.

For the foregoing reasons, we find that the Board's conclusion that the mandatory display of the union logo is lawful because special circumstances are present is not supported by substantial evidence. By paying to place the union logo on the uniforms and making the wearing of the union logo on uniforms a condition of employment, Bell–South violated Section 8(a)(1), (2), and (3) of the Act. Similarly, CWA violated Section 8(b)(1)(A) and 8(b)(2) of the Act by proposing and agreeing to require employees to wear the union logo and by accepting BellSouth's financial support. Thus, we grant the petition for review, vacate the Board's dismissal order, and remand to the Board with directions to modify its order consistent with this opinion.

*VACATED AND REMANDED WITH DIRECTIONS*

---

**4.** *Metropolitan Edison* depended on *NLRB v. Magnavox Co.*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974) for the quoted statement. In *Magnavox*, a union had, by contract with the employer, waived the employees' right to distribute literature with respect to union representation "even in non-working areas during non-working time." The Sixth Circuit upheld the waiver, 474 F.2d at 1269.

The Court reversed the court of appeals, however, its necessary holding being that such § 7 rights are not waivable, as *Metropolitan Edison* construes *Magnavox*. Although *Metropolitan Edison* and *Magnavox* are as close to the facts of this case as any which have come to our attention, neither of those cases was mentioned in the Board's opinion.